OPINION OF THE COURT
Jasen, J.
On this appeal, we are asked to decide whether subdivision (c) of section 15-108 of the General Obligations Law, which prohibits a settling tort-feasor from obtaining contribution from another person, can be waived by agreement of all parties to the litigation.
Michael Mitchell, one of the plaintiffs in the underlying action, was employed by third-party defendant, Wolf & Munier, Inc. (W & M), as a steamfitter. On August 20, *212 1976, he was working at defendant third-party plaintiff New York Hospital (Hospital) replacing steam boilers and performing other tasks related to the renovation of the Hospital’s steamroom when he sustained personal injuries as a result of being scalded by steam or hot water which escaped from a ruptured pipe.
Plaintiff brought suit against the Hospital in September, 1977, alleging, inter alia, that the Hospital failed to provide plaintiff with a safe place to work. The Hospital commenced a third-party action for contribution and indemnification in March, 1980 against W & M, Syska & Hennessy, Inc. (S & H), the professional consulting engineer on the project, Utilex Demolition, Inc. (Utilex), the demolition contractor, and Regal Insulation Corp., the insulation subcontractor.[1]
Thereafter, all named parties appeared in Supreme Court, Kings County, and advised the Trial Judge that they had reached a settlement. At that time, a stipulation was read into the record, which provides, in pertinent part, that:
“It is hereby stipulated and agreed by and between all of the counsel present representing all of the named parties, that the cause[s] of action on behalf of the plaintiffs Michael Mitchell and Angela Mitchell are being settled in the sum of FIVE HUNDRED FIFTY THOUSAND DOLLARS.
“All counsel, present consent to the settlement and the reasonableness of the settlement and will not contest the reasonableness of the settlement.
“Payment of the settlement will be made by the New York Hospital, Third-party Plaintiff in . this action, which has third-party actions as against Syska and Hennessey, Utilex Demolition, Inc., Wolf and Munier, Inc., and Regal Insulation Corp.
“An application will be made to the Court to settle the third-party action so that New York Hospital may try its case for either indemnification or apportionment as against each of the named third-party defendants.
* * *
*213 “The settlement is being placed on the record before Judge Monteleone and the case will remain on the calendar of this Court for trial on the third-party action.
“It is specifically agreed and understood by all of the Third-party Defendants here that no one waives any rights to contributions [sic] or indemnification by entering into this settlement.
“All cross-claims and counterclaims of any kind or nature in connection with that third-party claim which has been severed remain in effect”. (Emphasis supplied.)
Shortly thereafter, a jury was selected and the matter was assigned for trial of the third-party action. Before the trial got under way, third-party defendants orally moved to dismiss the Hospital’s third-party complaint for contribution contending, inter alia, that the Hospital was barred from seeking contribution by virtue of subdivision (c) of section 15-108 of the General Obligations Law. The Hospital successfully moved for a mistrial and the court directed the third-party defendants to submit their motions on formal papers.
Upon doing so, the motions were considered and denied by the Trial Judge, the court holding that by entering into the challenged stipulation the third-party defendants waived the protection offered by the statute. On appeal, the Appellate Division reversed with respect to the contribution issue, holding that the rights of the third-party defendants as to this issue “have been defined by statute, and cannot therefore be circumvented by an agreement to the contrary.” The Appellate Division also granted S & H’s motion for summary judgment on the issue of contractual indemnity and denied all other motions.[2] After an appeal *214 to this court was dismissed as nonfinal (59 NY2d 968), the Appellate Division granted leave and certified the following question: “Was the order of this court dated April 11, 1983 properly made?”
Whenever the enforceability of a stipulation among parties in a civil case is put in issue, we must begin our analysis with the recognition that courts have long favored and encouraged the fashioning of stipulations as a means of expediting and simplifying the resolution of disputes. (Salesian Soc. v Village of Ellenville, 41 NY2d 521, 525-526.) We have repeatedly held that, unless public policy is affronted, parties to a civil dispute are free to chart their own litigation course. (T. W. Oil v Consolidated Edison Co., 57 NY2d 574, 579-580; Rector, Church Wardens & Vestrymen of St. Bartholomew’s Church v Committee to Preserve St. Bartholomew’s Church, 56 NY2d 71, 76; Martin v City of Cohoes, 37 NY2d 162, 165.) They “may fashion the basis upon which a particular controversy will be resolved” (Cullen v Naples, 31 NY2d 818, 820) and in doing so “[t]hey may stipulate away statutory, and even constitutional rights.” (Matter of New York, Lackawanna & Western R.R. Co., 98 NY 447, 453.)
There can be no serious claim that the subject stipulation offends public policy. Far from offending our sense of justice or threatening the public welfare (Intercontinental Hotels Corp. v Golden, 15 NY2d 9, 13; Loucks v Standard Oil Co., 224 NY 99,110), the stipulation here is designed to insure the fair and prompt compensation of an injured party while reserving the right of one tort-feasor to seek contribution from the remaining wrongdoers in an effort to accomplish an equitable sharing of liability. We believe stipulations such as this effectuate, rather than affront, the public policy of this State.
The principal argument proffered by third-party defendants is that subdivision (c) of section 15-108 of the General Obligations Law, which states that “[a] tortfeasor who has obtained his own release from liability shall not be *215 entitled to contribution from any other person”, precludes the Hospital from seeking contribution from them even though all of the parties agreed that this could be done. Their position, quite simply, is that the protection offered by the statute to nonsettling tort-feasors cannot be waived. We disagree.
A review of the historical underpinnings of the statute is necessary to demonstrate how enforcement of the agreement at issue here not only presents no affront to the Legislature’s purpose in enacting section 15-108 but will be of assistance in achieving the lawmakers’ goals of encouraging out-of-court settlements and insuring that liability will be fairly apportioned among all tort-feasors.
Prior to this court’s decision in Dole v Dow Chem. Co. (30 NY2d 143), New York law encouraged parties to settle lawsuits by insulating a settling tort-feasor from contribution claims by the remaining tort-feasors who were subsequently found liable to the plaintiff. (Occhialino, Contribution, Nineteenth Ann Report of NY Judicial Conference, 1974, pp 217-218.) Pre-Dole law, however, made little provision for equitable loss sharing among all tort-feasors. While our decision in Dole remedied the problem of disparate apportionment of liability, its suggestion that a settling tort-feasor could be held liable for contribution to nonsettling wrongdoers who would otherwise be responsible for paying more than their equitable shares of liability had the effect of discouraging out-of-court settlements. (Dole v Dow Chem. Co., supra, at pp 148-149,153; see, also, Williams v Town of Niskayuna, 72 Misc 2d 441; McLaughlin, Practice Commentary, McKinney’s Cons Laws of NY, Book 23A, General Obligations Law, § 15-108, p 717.)
Thus, in an effort to strike a better balance between the often competing policies of encouraging settlement and providing for equitable sharing of liability among tortfeasors, the Legislature enacted section 15-108. (Memorandum of Judicial Conference in support of Assembly Bill A-9192, Jan. 24,1974.) Subdivision (a) of the statute permits a plaintiff to settle with a defendant without risking the discharge of other potentially liable tort-feasors while insuring that those defendants who choose not to settle will pay no more than their equitable share of liability. Subdi *216 vision (b) was designed to remedy the problem left in the wake of the Dole, case by allowing a defendant to settle a claim and obtain his release without fear of being brought back into the action by a nonsettling defendant seeking contribution. (See Rock v Reed-Prentice, 39 NY2d 34, 41.)
In addition to these two subdivisions which were intended to encourage settlement and apportion responsibility in an equitable manner, the Legislature enacted subdivision (c) which prohibits a tort-feasor who has obtained his own release from liability from receiving any contribution from any other person. As best as can be ascertained from the available legislative history, this subdivision was adopted to preserve judicial resources by forestalling future litigation between a settling tort-feasor, who voluntarily bought his release from the case at a price he considered fair, and nonsettling tort-feasors who contested their liability at trial and prevailed in having the ultimate damage award determined to be less than the settling tortfeasor believed it would be at the time he settled. (See Rock v Reed-Prentice, supra, at p 41.) Our view of the Legislature’s purpose in enacting this subdivision is supported by the Judicial Conference’s statement that a tort-feasor who settles with a claimant by paying more than his equitable share “is a volunteer as to the excess paid by him. ‘The rule is familiar that money voluntarily paid by one person may not be recovered back.’” (Judicial Conference Report on CPLR, McKinney’s Session Laws of NY, 1974, p 1820, quoting Codling v Paglia, 38 AD2d 154, 161, 162, mod on other grounds 32 NY2d 330.)
Recognizing what the Legislature hoped to accomplish generally in enacting section 15-108, we turn to the claim of the third-party defendants who argue that the Legislature did not intend that the protection offered by subdivision (c) of the statute could be waived. We reject this view. There is nothing in the history or purpose of the legislation to indicate that the statute was intended to be nonwaivable. Indeed, in view of the Legislature’s clear pronouncement that section 15-108 was designed to encourage settlement and provide for a more equitable sharing of liability (Judicial Conference Report on CPLR, McKinney’s Session Laws of NY, 1974, pp 1816-1817), we believe that enforce *217 ment of stipulations such as the one before us will help accomplish that which the Legislature intended in enacting the statute.
The subject stipulation was freely, knowingly and openly agreed to by all of the named parties. It provides for fair and prompt compensation of the plaintiff, yet allows all of the tort-feasors to litigate, or decide among themselves, who is responsible for plaintiff’s injuries and to what degree, while armed beforehand with the knowledge of the exact amount of the monetary damages involved. Thus, by preserving the Hospital’s claims for contribution against third-party defendants, the stipulation has removed a barrier to settlement which would otherwise exist by virtue of subdivision (c) of section 15-108. It can hardly be disputed that the Hospital, a lone defendant third-party plaintiff, would rarely, if ever, settle with an injured party if it knew that by doing so it could not seek contribution by way of a third-party action against other potentially liable third-party defendants whom the plaintiff, for whatever reason, chose not to sue directly. Additionally, by providing a postsettlement vehicle whereby each tort-feasor, including the Hospital, can contest its liability vis-a-vis the others in a single proceeding, equitable sharing of liability will be more fully realized. We hold, therefore, that the stipulation should be enforced.
The cases cited by third-party defendants do not require a contrary, result as each is readily distinguishable. Lettiere v Martin Elevator Co. (62 AD2d 810, affd 48 NY2d 662) involved a stipulation, unlike the one before us, to which the nonsettling tort-feasor was not a party. Thus, even if that stipulation was intended to waive the protection afforded by subdivision (c) of section 15-108, the tort-feasor whose protection was purportedly being waived did not consent thereto and obviously could not be bound thereby. In Rock v Reed-Prentice (39 NY2d 34, supra), we were asked to enforce a settlement agreement between plaintiff and one defendant reached after judgment had been entered against the remaining defendant. It was held that subdivision (c) of section 15-108 did not even apply to that fact situation because the statute was not intended to nullify pre-existing judgments. Third-party defendants’ re *218 liance on McDermott v City of New York (50 NY2d 211) is equally misplaced. All that was decided there was that settlement of an underlying cause of action has no effect under subdivision (c) of section 15-108 upon a claim for indemnity rather than contribution.
Finally, with respect to W & M’s claim that the Hospital cannot seek recovery against third-party defendants under the inconsistent theories of contribution and contractual indemnity, we note the well-settled rule that “a plaintiff is entitled to advance inconsistent theories in alleging a right to recovery.” (Cohn v Lionel Corp., 21 NY2d 559, 563; Siegel, Practice Commentary, McKinney’s Cons Laws of NY, Book 7B, CPLR 3014, p 8.)
Accordingly, the order of the Appellate Division should be modified by denying third-party defendant W & M’s and Utilex’s motions for summary judgment on the issue of contribution, and, as so modified, affirmed. The certified question should be answered in the negative.
Chief Judge Cooke and Judges Jones, Wachtler, Meyer and Kaye concur; Judge Simons taking no part.
Order modified, with costs to appellant against respondents Wolf & Munier and Utilex, in accordance with the opinion herein and, as so modified, affirmed, with costs to respondent Syska & Hennessy against appellant. Question certified answered in the negative.

. Regal Insulation Corp. is not a party to this appeal, the third-party complaint against it having been dismissed on consent.

. No serious objection is raised as to the Appellate Division’s decision concerning the claims for contractual indemnity. To the extent W & M contests this issue, we need only note its concession that the record contains “some documentary evidence of the existence of such an indemnity agreement between Wolf & Munier * * * and the Hospital”.
We further note that S&His entitled to summary judgment on the contribution issue but not for the reason given by the Appellate Division — that the Hospital was barred from seeking contribution by virtue of subdivision (c) of section 15-108 of the General Obligations Law — but, rather, because the Hospital failed to dispute evidentiary facts proffered by the president of S & H which, if believed, demonstrate that there was no negligence pn the part of S & H.
We would only add that although it could not appeal the order below by virtue of its *214 status as a successful nonaggrieved party, S&H, in our court, can assert lack of negligence in support of an affirmance of the relief granted by the Appellate Division because it was properly preserved and supports judgment in its favor. (Parochial Bus Systems v Board of Educ., 60 NY2d 539, 544-546.)