■ JAY KRAVITZ et al., Respondents, v POLICE DEPARTMENT OF THE CITY OF HUDSON et al., Appellants, et al., Defendants. [728 NYS2d 267] —Mugglin, J. Appeal from an order of the Supreme Court (Cobb, J.), entered July 24, 2000 in Columbia County, which partially denied certain defendants' motion for summary judgment dismissing the complaint against them.

Defendants Michael Tator and Cathy Tator are the owners of a four-unit apartment building in the City of Hudson, Columbia County. In 1993, they rented one of these apartments to plaintiffs. Except for a short period of time subsequent to plaintiffs taking occupancy of their apartment, the other three

units in the building were vacant. Based on nonpayment of rent, the Tators commenced an eviction proceeding in August 1993, but discontinued it because they lacked funds to pursue it. They again commenced an eviction proceeding in February 1995 and served plaintiffs with a notice to vacate. The Tators claim that plaintiffs were to be out by May 10, 1995. According to correspondence from the Tators' attorney to plaintiffs' attorney, plaintiffs were to vacate by May 31, 1995. Plaintiffs claim that they had until the beginning of June 1995.

In any event, acting on instructions from his attorney, Michael Tator (hereinafter Tator) went to the premises on June 3, 1995 to determine if plaintiffs had vacated. He found the front door locked but the back door open. Soon after entering the premises, he discovered the presence of two large vicious dogs and he went to defendant Police Department of the City of Hudson to complain. The Police Commissioner for defendant City of Hudson, Ronald Repp, is Tator's stepfather. Repp, Tator, Officer William O'Such and two other officers went to the property. After an animal control officer seized the dogs, they entered the premises and observed furniture turned over, garbage and animal feces throughout the four-unit building and old dishes, dilapidated furniture and toys in plaintiffs' apartment. Thereafter, the premises were boarded up and no trespassing signs were posted, but the record does not resolve a dispute as to who actually performed this work.

Later that day, plaintiff Jay Kravitz returned to the apartment and, upon discovering that his key would not work and that the premises were boarded up, called the police dispatcher and was informed that he could not enter the building but could retrieve his dogs at the pound. Plaintiffs then brought this action alleging unlawful eviction, conversion, intentional infliction of emotional distress, abuse of process and civil rights violations. After answering, the City and the Police Department moved for summary judgment dismissing the complaint, contending that the actions of the officers were privileged under the doctrine of qualified immunity and, therefore, the City cannot be liable under the theory of respondeat superior. Supreme Court found that plaintiffs raised a factual issue as to whether the police could reasonably have determined that the premises had been vacated and denied summary judgment. The City and the Police Department now appeal.

"A government official performing a discretionary function is entitled to qualified immunity provided his or her conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known" (*Liu v New*

*York City Police Dept.*, 216 AD2d 67, 68, *lv denied* 87 NY2d 802, *cert denied* 517 US 1167). "In order for the burden to shift to the plaintiff to disprove qualified immunity, the public official must prove that the conduct complained of falls within the scope of his or her official duties [citations omitted]" (*Cavanaugh v Doherty*, 243 AD2d 92, 97). "The defendant must establish that he [or she] had an objectively reasonable belief that his [or her] act violated no clearly established rights [citation omitted]" (*Young v Selsky*, 41 F3d 47, 54, *cert denied* 514 US 1102; *see, Cavanaugh v Doherty, supra,* at 97). Moreover, the applicability of this privilege should be determined in the early stages of litigation (*see, Rossi v City of Amsterdam*, 274 AD2d 874, 876).

Here, our reading of the record leads to the conclusion that the police did establish that it is common for them to investigate claims of vicious dogs so they have established that this portion of their conduct falls within the scope of their official duties. However, although the condition of the premises was deplorable, we agree with Supreme Court that issues of fact exist as to whether the police could reasonably believe that the premises had, in fact, been fully vacated or abandoned by plaintiffs and with respect to whether or not the police boarded up the premises, an act clearly outside the scope of their official duties.

Mercure, J. P., Peters, Spain and Carpinello, JJ., concur. Ordered that the order is affirmed, with costs.